**Herschell A. SHERWOOD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 48S00–9606–CR–447.

Supreme Court of Indiana.

Dec. 4, 1998.

Mark Maynard, Hasler & Maynard, Anderson, for Appellant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Defendant Herschell Sherwood ("defendant") was convicted, after a jury trial, of Murder and Conspiracy to Commit Robbery, a class B felony. He was sentenced to sixty years for murder and twenty years for conspiracy, the sentences to be served consecutively. Defendant now challenges his convictions and his sentence. On appeal, defendant raises five issues: (1) whether the trial court erred in denying defendant's motion for discharge pursuant to Indiana Criminal Rule 4(B)(1); (2) whether the trial court erred by failing to grant a mistrial; (3) whether the trial court erred by failing to include defendant's tendered instruction # 6; (4) whether the trial court erred by failing to instruct the jury on a lesser included offense; and (5) whether the trial court erred in sentencing defendant. We affirm defendant's convictions but remand to the trial court for a new sentencing order.

## FACTS

On December 13, 1993, defendant and some acquaintances were driving around Anderson, Indiana. Defendant and his companions needed some money, so they decided to find somebody to rob. They saw a man, Jerry Baugh, washing his truck at a car wash. Defendant and the others decided to rob Mr. Baugh.

According to Alvin Beard, the driver of the car and a witness who testified for the State pursuant to a plea agreement, he, defendant, and Robert Goolsby (who is Beard's brother) were in the car at this point. Earlier, Robert Mays, Jr. had also been in the car; he was no longer in the car, but he had left his gun with Goolsby. Once Beard parked the car, defendant and Goolsby exited the car and went off towards the car wash. After a few moments, Beard heard a gun shot, and, soon thereafter, defendant and Goolsby came running back to the car. Later, defendant told Beard that Mr. Baugh, when confronted by defendant and Goolsby, swung the water

hose at them, hit defendant, and caused the gun to accidentally fire and kill Mr. Baugh.

At trial, and in an earlier police statement, defendant agreed that he was in the car and that he agreed to rob someone. He claims, however, that when they stopped at the carwash, he and Beard remained in the car while Goolsby and Mays left, with the gun, to rob Mr. Baugh.

## DISCUSSION

### I.

Defendant first argues that the trial court erred in denying his motion for discharge. On November 9, 1994, defendant filed a motion for early trial pursuant to Criminal Rule 4(B)(1). Under Rule 4(B)(1), defendant was entitled to be tried within seventy calendar days of his motion. Ind.Crim. Rule 4(B)(1). In defendant's case, he was entitled to be tried by January 18, 1995. On November 9, 1994, the trial court granted the motion and set a trial date for January 17, 1995. On December 19, 1994, the trial court reset the trial date for January 3, 1995, and on December 28, 1994, the trial court again reset the trial date for January 5, 1995.

On January 3, 1995, the newly elected prosecuting attorney, who had been an investigating officer in defendant's case, filed a petition for his recusal and the appointment of a special prosecutor. That same day, the trial court appointed a special prosecutor. On January 5, 1995, the trial court reset the trial for January 18, 1995 due to court congestion. On January 6, 1995, the special prosecutor accepted the appointment, but on January 11, 1995, the special prosecutor motioned to continue the trial because he had not yet received the case files, had a bench trial and depositions set for January 17 and 18, and felt that he could not be ready for a jury trial in one week. On January 11, 1995, defendant objected to the continuance because it would not fulfill his speedy trial request. After a hearing, the trial court granted the State's motion because it found that an emergency situation existed.

On January 17, 1995, the trial court reconsidered its ruling, denied the State's motion for a continuance, and ordered the trial to begin on January 18, 1995. On January 18, 1995, defendant filed a motion for continuance because, relying upon the court's order to continue the trial, defendant had stopped preparing and would not be ready for trial. After a hearing, the trial court granted the motion and charged defendant with the delay, thus waiving defendant's speedy trial right.

■ On January 19, 1995, defendant filed a motion for discharge pursuant to Criminal Rule 4(B)(1) because he had not been brought to trial within seventy days. The court denied the motion. Defendant argues that the trial court erred. As we stated in the almost identical situation in *Carter v. State*, "We disagree. The delay resulting from [defendant's] motion for continuance was properly charged to [him], and the trial court did not err in refusing to discharge the defendant under Criminal Rule 4(B)(1)." 686 N.E.2d 834, 839 (Ind.1997), *reh'g denied*.

### II.

Defendant argues that the trial court erred by failing to declare a mistrial after a witness referred to a polygraph exam in the presence of the jury. While being questioned by the prosecutor, a police officer testified that "I also asked [Alvin Beard] if he would be willing to take a polygraph or P.S.E. exam and he stated, 'Yes.' I made arrangements for him to come up on the 19th ... the following day." (R. at 887.) The police officer then testified that the interview did not take place. At this point, defense counsel asked to approach the bench. After a bench conference, which is only intermittently transcribed in the record, the trial court struck the reference to the polygraph from the record and admonished the jury not to consider the reference in making any determinations. Defendant argues that this reference placed him in grave peril and that a mistrial was warranted.

■ We first note that defendant has waived this issue as he did not request a mistrial.[1] *Lay v. State*, 659 N.E.2d 1005,

---

1. The transcribed portions of the bench confer-

ence mention only striking the polygraph refer-

1013 (Ind.1995). Furthermore, though evidence that a party or a witness was offered a polygraph examination is inadmissible absent a waiver or stipulation by the parties, *Reese v. State,* 452 N.E.2d 936, 938 (Ind. 1983); *Houchen v. State,* 632 N.E.2d 791, 793 (Ind.Ct.App.1994), when the trial court admonishes the jury to disregard the inadmissible evidence, the prejudicial impact of the evidence may be sufficiently mitigated, *Conn v. State,* 535 N.E.2d 1176, 1180 (Ind.1989); *Reese,* 452 N.E.2d at 939. In this case, the court immediately admonished the jury by stating, "Ladies and gentlemen of the jury, I'm going to strike a portion of the ... Mr. Sumner ... Detective Sumner's answer when he referred to [the] offer to give a polygraph. That's stricken from the record. And you will in no way allow that to be considered by you in your determination of this matter." (R. at 888.) The court did not erroneously fail to grant a mistrial.

### III.

Defendant argues that the trial court erred by refusing to use defendant's tendered Final Jury Instruction # 6 concerning the reliability of accomplice testimony.[2] Defendant concedes that this Court has repeatedly disapproved of this instruction because it impinges upon the jury's decision making ability, *see Tidwell v. State,* 644 N.E.2d 557, 559–60 (Ind.1994); *Turner v. State,* 258 Ind. 267, 280 N.E.2d 621, 624–25 (1972), but asks that we reconsider.

ence and the court seeming to agree by stating that "I will restrict it that direction." (R. at 888.)

**2.** Defendant's tendered Final Instruction # 6 stated:

Accomplice Testimony: The testimony of an alleged accomplice, who provides evidence against a Defendant for immunity or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness' testimony has been affected by any of those circumstances, or by his interest in the outcome of the case. You should never convict any Defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

In reviewing a trial court's decision to give or refuse a tendered jury instruction, this Court considers whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. *Wright v. State,* 690 N.E.2d 1098, 1109 (Ind.1997), *reh'g denied.* The trial court did not err by refusing to use this instruction. In addition to the fact that we have consistently disapproved of this instruction, the court did instruct the jury of the substance of this tendered instruction. For example, the trial court instructed the jury that, in considering the testimony of any witness, the jury may take into account "any interest, bias, or prejudice the witness may have [and] any relationship with other witnesses or interested parties." (R. at 977.) The jury had sufficient instruction and information to assess the credibility of the witnesses.

### IV.

Defendant next argues that the trial court erred by refusing to instruct the jury on Conspiracy to Commit Robbery, a class C felony. Defendant contends that the trial court erred because Conspiracy to Commit Robbery, a class C felony is a lesser included offense of Conspiracy to Commit Robbery, a class B felony.[3] At trial, defendant tendered proposed Final Instruction # 10, which instructed the jury on Conspiracy to Commit

(R. at 146.)

**3.** The statutes defining the offenses read in pertinent part:

Conspiracy: A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony.
IND. CODE § 35–41–5–2 (1993).
Robbery: A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon.
IND. CODE § 35–42–5–1 (1993).

Robbery as a class B and C felony.[4] After a discussion, the court refused to read defendant's tendered instruction #10, and, instead, read an instruction only on Conspiracy to Commit Robbery, a class B felony. This refusal, defendant asserts, constitutes reversible error.

■■■ As the Court of Appeals established in *Phares v. State*, 506 N.E.2d 65 (Ind.Ct.App.1987), and this Court adopted in *Smith v. State*, 549 N.E.2d 1036 (Ind.1990), a defendant may be convicted of conspiracy, enhanced by some aggravating circumstance such as the use of a deadly weapon, even though the State has not alleged or proved that the defendant agreed to the aggravating circumstance. For example, in *Phares*, the court concluded that the State need not allege or prove an agreement to inflict the resulting injury since the injury was "a natural and probable consequence of the planned robbery and was done in furtherance of the conspiracy." 506 N.E.2d at 69–70. Similarly, in *Smith*, this Court found that the State was not required to show that the conspiracy included an agreement to use a firearm and to intentionally injure another. 549 N.E.2d at 1038. It was sufficient to prove the underlying conspiracy and the natural and probable consequences of the conspiracy simply flow therefrom. *Id.* These cases reflect the current state of the law. The language used in defendant's tendered instruction, that the State must prove beyond a reasonable doubt an agreement to the aggravating circumstance, the use of a handgun, before the jury may find defendant guilty of Conspiracy to Commit Robbery as a class B felony, is an inaccurate statement of the law. As such, we find that the trial court did not commit re-

versible error by refusing to accept defendant's tendered instruction #10 because it does not accurately reflect the law.

## V.

Defendant's final argument concerns his sentence. After finding four aggravating factors, the trial court enhanced the sentence on each of defendant's convictions[5] and ordered them to run consecutively. Defendant argues that the trial court committed several sentencing errors. Defendant contends that the trial court considered improper aggravating factors and failed to consider proper mitigating factors. Defendant also contends that his sentence is manifestly unreasonable. For these reasons, defendant asks that we revise his sentence or remand for a new sentencing hearing.

■■■ Sentencing decisions rest within the discretion of the trial court, and we review such decisions only for an abuse of discretion. *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind.1996). When the trial court enhances a presumptive sentence or imposes consecutive sentences, the court must reveal its rationale for doing so. *Id.* The record should contain the following three elements: (1) an identification of all significant mitigating and aggravating circumstances, (2) the specific facts and reasons which led the court to find the existence of each circumstance, and (3) an explanation of the balancing process engaged in by the court in arriving at the imposed sentence. *Id.* Only one valid aggravating factor is necessary to enhance the presumptive sentence. *Smith v. State*, 675 N.E.2d 693, 697 (Ind.1996). While the trial court is not obligated to explain why it

---

4. In pertinent part, proposed Final Instruction #10 read:

To convict the Defendant of Count II, Conspiracy to Commit Robbery, the State must have proved each of the following elements: The Defendant, Herschell A. Sherwood: 1. agreed, 2. with Alvin W. Beard and Robert Goolsby, Jr., 3. for the object and purpose and with the intent to commit robbery of Jerry W. Baugh, 4. and that Alvin W. Beard, Robert Goolsby, Jr. or Herschell A. Sherwood performed an overt act in furtherance of the agreement. If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Count II, Conspiracy to Commit Robbery, a class C felony; however, if you find

that, in addition to the above elements, the State did prove beyond a reasonable doubt that the Defendant agreed that such robbery was to be committed while armed with a deadly weapon, to-wit: a handgun, you should find the Defendant guilty of Count II, Conspiracy to Commit Robbery, a class B felony.
(R. at 150.)

5. Under the appropriate statutes, the presumptive sentence for Murder was forty years, Indiana Code section 35–50–2–3 (1993), and the presumptive sentence for Conspiracy to Commit Robbery, a class B felony was ten years, Indiana Code section 35–50–2–5 (1993). Defendant was sentenced to sixty years for Murder and twenty years for Conspiracy.

did not find a factor to be significantly mitigating, the court may not ignore clearly supported mitigating evidence. *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). The failure to find clearly supported mitigating evidence may imply that it was neglected and not given proper weight. *Id.*

At trial, the court found four aggravating circumstances: (1) the imposition of a reduced sentence would depreciate the seriousness of the crime, (2) the crime was heinous, (3) the defendant was previously involved with cocaine, and (4) the crime impacted the victim's family.[6] The trial court inappropriately applied the first aggravating circumstance as the record reflects no evidence that the trial court considered imposing a sentence shorter than the presumptive term. *Blanche v. State*, 690 N.E.2d 709, 715 (Ind.1998). The court properly applied the second aggravating circumstance by observing the crime's heinous nature. *See Smith v. State*, 675 N.E.2d 693, 698 (Ind.1996) (noting that the particular circumstances of a crime can be an aggravating circumstance). Finally, the court cited the defendant's prior cocaine involvement to support an enhanced sentence.[7] The prior involvement apparently consisted of an arrest. To the extent that the trial court viewed the prior involvement with cocaine as evidence of criminal history, it was improperly considered under Indiana Code section 35–38–1–7.1(b)(2) (1993). A single arrest does not establish a history of criminal conduct. *Tunstill v. State*, 568 N.E.2d 539, 545 (Ind.1991). Nonetheless, a prior arrest may be considered under Indiana Code section 35–38–1–7.1(d) (1993) because such a record "reveal[s] to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State." *Tunstill*, 568 N.E.2d at 545. Here, the trial court did not demonstrate that it considered "prior involvement with cocaine" to be evidence that defendant has not been deterred from antisocial behav-

ior. In fact, the trial court did not specify any particular manner in which it considered this evidence beyond a mere recitation of the facts. Therefore, the trial court erroneously cited to defendant's prior involvement with cocaine as an aggravating factor in this case.

At the sentencing hearing, defendant presented evidence which he considers to be significantly mitigating. For example, witnesses testified to defendant's character and defendant testified to his remorse for the incident. Defendant's remorse and his positive character traits can be significant mitigating factors. *See Jones v. State*, 675 N.E.2d 1084, 1089 (Ind.1996); *Scheckel v. State*, 620 N.E.2d 681, 686 (Ind.1993). This evidence was clearly presented and argued. Yet, the trial court made no mention of defendant's mitigation evidence either at the sentencing hearing or in the sentencing order. There is no indication whether the trial court rejected these factors or, instead, whether the court failed to weigh or consider them. We must, therefore, assume that the trial court failed to consider the evidence presented on the question of mitigation. *See Bacher v. State*, 686 N.E.2d 791, 800–02 (Ind. 1997); *Tunstill*, 568 N.E.2d at 546.

In light of our opinion on the trial court's treatment of the aggravating and mitigating factors, we cannot fully review defendant's sentence. Thus, we remand for a new sentencing order.

## CONCLUSION

We affirm defendant's convictions for Murder and Conspiracy to Commit Robbery, a class B felony, but remand for a new sentencing order.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

**6.** It is not clear on the record whether or not victim impact was available as an appropriate aggravating circumstance.

**7.** In the pre-sentence investigation report, defendant is reported to have been arrested for the wrongful use of cocaine. This occurred while defendant was in the army. The probation offi-

cer learned of this information from the National Crime Information Center, but was unable to learn any further details. At the sentencing hearing, defendant explained that the cocaine belonged to his roommate, that no disciplinary action was taken against him, and that he received an honorable discharge from the army.